IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT OLIVER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PA DEPT. OF CORRECTIONS, et al. | : | NO. 13-5321 |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                      **January 8, 2014**

In this *pro se* civil rights action brought under 42 U.S.C. § 1983, plaintiff Scott Oliver, a state prisoner at State Correctional Institution ("SCI") Graterford, contends that the defendants violated his constitutional right under the Eighth Amendment to be free from cruel and unusual punishment, and committed medical malpractice. He claims that because the defendants inadequately treated his various physical ailments, failed to perform proper testing and refused to provide surgery, he has been in pain for over two years. He has sued various health care providers who had contact with him in the prison, the companies contracted to provide health care services at the prison, and two prison officials involved in the prison grievance process.

Wexford Health Sources, Inc. and its physician-employees, Drs. Irwin Lewis, Muhammad Golsorkhi,[1] Gok, DeFrangesco[2] and physician assistant Machak (the "Wexford defendants"), have filed a motion to dismiss, or, alternatively, for summary judgment. They contend that Oliver's complaint does not allege facts that could prove that the defendants were deliberately indifferent to his medical condition. Instead, it

---

[1] In his letter dated December 24, 2013, Oliver advised that he mistakenly listed Drs. Muhammed and Golsorski as two separate defendants, even though "these are one and the same person."

[2] According to the Wexford defendants' motion, Oliver incorrectly named Drs. Golsorkhi and DeFrangesco as Drs. "Golsorksi" and "Defrancesca."

alleges facts supporting a claim for negligence only.  Corizon Health, Inc., Drs. Stefanic, McDonald and Blatt (the "Corizon" defendants), have also filed a motion to dismiss.  They argue that because Oliver's claim is one of professional negligence, it must fail for lack of a certificate of merit as required by Pennsylvania Rule 1042.3.  Defendants Wenerowicz, Korszniak, Edwards and Grossman (the "Commonwealth defendants") have filed a motion to dismiss "adopt[ing] by reference the arguments" made by the Wexford and Corizon defendants.  Commonwealth Defs.' Mot. at 3 (Doc. No. 54).  Additionally, they argue that Oliver has not alleged that Wenerowicz, Superintendent of SCI-Graterford, and Korszniak, a Medical Administrator at the prison, had any direct involvement in his medical treatment.  Edwards and Grossman, SCI-Graterford nurses, argue that Oliver has not alleged facts showing how they were personally involved in his medical treatment.

Accepting the factual allegations in the complaint as true and drawing all reasonable inferences from them in Oliver's favor, we conclude that he has not pled sufficient facts to state a cause of action for a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  There are no facts, if proven, from which a reasonable jury could find deliberate indifference.  Therefore, we shall grant the motions to dismiss.

### Oliver's Factual Allegations[3]

Oliver's version of the history of medical visits and treatment is as follows.  He has had symptomatic peptic ulcers "since 1994, 1995."  Compl. ¶ 24.  For the past two years, he has had a torn bicep muscle, a tear in his left shoulder socket, and a torn

---

[3] We shall recite the facts as Oliver has alleged them in his lengthy complaint.  The rendition of the facts is solely derived from Oliver's complaint and does not draw upon any facts referenced in the motions to dismiss.

groin muscle in his right leg. Within the last year, he has experienced severe chest pain, blurred vision, and headaches.

In early 2010, Oliver presented at the prison infirmary after injuring his left shoulder. Dr. Stefanic, a Corizon employee, administered a cortisone shot to alleviate the pain and informed Oliver that the cortisone shot would not work because Oliver had degenerative arthritis. Compl. ¶ 39. Dr. Stefanic prescribed physical therapy. After five therapy sessions, the physical therapist informed Oliver that he had a tear in the socket of his left arm behind the rotator cuff, and, as a result, "the left bicep has detached or torn." *Id.* ¶¶ 36, 40. When Oliver discussed this with Dr. Stefanic, the doctor advised him that the "needed surgery" could not be performed because "he need[ed] to first repair the tear in [Oliver's shoulder] socket." *Id.* ¶ 40. Dr. Stefanic did not order any diagnostic tests to confirm the existence of a tear.

In early 2012, Oliver sought treatment for what he believed was a groin tear. He was first seen by Dr. Longo who prescribed Naproxen to alleviate the pain. He was "informed that he would get an x-ray to determine the problem." Compl. ¶ 32. Because the pain did not stop, Oliver returned to the infirmary several times over the course of a year. During this time, he was examined and treated by different physicians and therapists, who prescribed medication. An x-ray was never ordered.

In February 2012, Oliver was seen by Machak, a physician assistant who proscribed Relefin, an anti-inflammatory drug. Compl. ¶ 33. On March 22, 2012, Oliver was treated by Dr. McDonald who prescribed a different anti-inflammatory drug. She advised Oliver that he had been scheduled for a follow-up and x-ray. On May 14, 2012,

after evaluating him, an unidentified medical professional advised Oliver that he would receive a follow-up exam and tests.

Sometime in the fall of 2012, Oliver had a tele-med conference with Dr. Blatt, who advised Oliver that he had a torn muscle in his right leg. Compl. ¶ 37. However, "instead of scheduling [Oliver] for surgery, Dr. Blatt scheduled [him] for [a] cortisone shot, which the plaintiff received in October of 2012." *Id.*

On February 13, 2013, complaining about his groin, Oliver was examined by Dr. DeFrangesco, who advised him that there was no record of his having a torn groin muscle, ligaments, or chronic strain. Compl. ¶ 38. After examining Oliver, Dr. DeFrangesco did not schedule Oliver for an MRI or surgery.

Two days later, Oliver went to sick-call complaining of blood in his stool. A "Ms. Tobin, K., RMI" prescribed medication for internal hemorrhoids, "without examining Oliver's rectum and/or colon." Compl. ¶ 48. She ignored Oliver's statements that "he did not have hemorrhoid [sic], but rather peptic ulcers . . . ." *Id.*

On February 19, 2013, Oliver returned to the infirmary complaining of blood in his stool, blurred vision, and light headedness. Without performing a rectal examination, Dr. Golsorski prescribed "ranitidine, which is a substitute for zantac." Compl. ¶ 49. He also advised Oliver that he had acid reflux and ignored his report that he had peptic ulcers. Ratidine is an "H2-blocker" commonly used in "[s]hort-term treatment of active duodenal ulcer . . . and benign gastric ulcer . . . ." PDR Drug Summary, *available at* http://www.pdr.net/drug-summary/ranitidine-hydrochloride?druglabelid=2965 (last visited Dec. 20, 2013). Thus, by Oliver's own allegations, Dr. Golsorski did not ignore his complaints and prescribed a drug for his peptic ulcer symptoms.

On February 20, 2013, Oliver went to the dispensary complaining of severe chest pains.  Compl. ¶ 42.  Dr. Lewis examined Oliver and administered an EKG on Oliver's left chest area.  The EKG was normal.  Dr. Lewis did a repeat EKG the following day.  That EKG was also normal.  Nevertheless, Oliver maintains that "Dr. Lewis should have ran [sic] the EKG for both sides of the plaintiff's chest at the same time."  *Id.*

Approximately two weeks later, Oliver complained of severe chest pains.  Compl. Compl. ¶ 43.  The medical response team transported him to the dispensary where he was seen by Dr. Muhammed.  After reviewing the earlier two EKG results, Dr. Muhammed advised Oliver that everything was normal.  Dr. Muhammed, who did not do another EKG, opined that it might be a case of acid reflux, but did not prescribe any medication to treat it.  Oliver asked Dr. Muhammed if "blood clots or some form of blockage" caused the pain.  Dr. Muhammed responded that Oliver's oxygen levels were good.  Dr. Muhammed declined Oliver's request that he order "a medical test that would look for any blockage," explaining that he saw no reason for one.  He instructed Oliver to "ignore the pain and sign up for sick call."  *Id.* ¶ 44.

On March 18, 2013 Oliver went to sick call and complained about his shoulder and arm.  He was seen by Dr. Lewis, who "noticed that [Oliver] had been suffering from groin tear, bicep and socket tear, and [that Oliver] had never received an MRI, X-ray, nor CT Scan."  Compl. ¶ 41.  Dr. Lewis prescribed Lodine to relieve the pain.

On March 22, 2013, Oliver "passed out" while at work.  Compl. ¶ 28.  He was taken to the prison infirmary for observation.  However, nothing was done.

Four months later, on July 17, 2013, Oliver once again complained of chest pain.  Although he alleges that Dr. Golsorski ignored his complaints of feeling heart pain,

5

Oliver avers Dr. Golsorski examined and advised him that he was suffering from acid reflux and instructed him to continue taking Zantac and Prilosec. Dr. Golsorski refused to discuss Oliver's inquiries about his torn bicep and groin.

On July 24, 2013, Oliver was again examined by Dr. Golsorski about his complaints of chest pain. Dr. Golsorski checked Oliver's blood pressure, noting that it was "fast." Compl. ¶ 46. He ordered an EKG test. The nurse refused to tell Oliver the results of the EKG. Oliver returned to sick-call and requested an MRI or CT scan. Dr. Golsorki refused to order either test.

Two days later, on July 26, 2013, Oliver returned to the infirmary requesting the results of his EKG. Dr. Golsorski advised him that because the EKG was normal, there was no need for an MRI or CT scan. Compl. ¶ 47.

On August 28, 2013, when Oliver returned complaining of chest pains, Dr. Gok treated him. During the visit, Oliver asked about testing and treatment for his torn groin muscle and torn bicep muscle and socket. Dr. Gok responded: "That's not why you're here." Compl. ¶ 55.

On March 27, 2013, Oliver filed a grievance.[4] Korszniak, the Medical Administrator at SCI-Graterford, denied relief. Oliver's appeal to Superintendent Wenerowicz was unsuccessful.

On September 26, 2013, Oliver filed this action, alleging that all defendants "refuse[d] to repair his torn bicep and socket muscle and/or ligament, [to] repair the plaintiff's torn groin muscle, and provide him with an MRI and/or CT Scan to ascertain the cause of the plaintiff's severe chest pain, and any other medical condition." Compl.

---

[4] Oliver does not specify what he presented in the grievance or what his complaint was. Nor has he attached a copy of the grievance. He only alleges that he filed one. Compl. ¶ 29.

¶ 65. He claims that the defendants did not provide the necessary testing and treatment to save money. According to Oliver, "the defendants' actions and omissions constitute[] 'Deliberate Indifference' to the plaintiff's serious medical needs, resulting in the 'Unnecessary and Wanton' infliction of pain, which is contrary to contemporary standards of decency." Pl.'s Mem. in Supp. of Pl.'s Compl. at 3 (Doc. No. 5).

## Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Partus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ―U.S. ―,129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

A complaint is subject to dismissal if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575

F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in Oliver's complaint and draw all possible inferences from these facts in his favor.

## Discussion

Distilled to its essence, Oliver's complaint is that he did not get the treatment he wanted. He disagrees with the doctors about what the proper medical treatment should have been. He does not allege facts that, if proven, could establish that the defendants were deliberately indifferent to a serious illness or injury.

Deprivation of necessary treatment for a serious medical need violates a prisoner's Eighth Amendment right. Failure to provide adequate medical care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state an Eighth Amendment claim for failure to provide medical treatment, a prisoner must plead sufficient facts that, if proven, would establish that: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004).

A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted); *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (citation omitted).

A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. The official's awareness of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm is not enough to establish deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must draw that inference. *Id.* In other words, he must know that the condition is capable of causing serious harm to the prisoner.

Under the Eighth Amendment, only claims of unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of a prisoner rise to the level of a constitutional violation. *Spruill*, 372 F.3d at 235. Deliberate indifference to a serious medical need occurs when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) officials intentionally refuse to provide care even though they are aware of the need for such care. *Id.*

Deprivation of necessary treatment of a serious medical need violates a prisoner's Eighth Amendment right. Medical malpractice standing alone is insufficient to establish a constitutional violation. *Estelle*, 429 U.S. at 105-06. A mere misdiagnosis of a condition or medical need, or a disagreement as to proper medical treatment does not establish an Eighth Amendment violation. *Id.*; *see also Spruill*, 372 F.3d at 235.

A prisoner's disagreement with a treating physician's care and treatment does not typically give rise to a § 1983 cause of action. Nor does a difference of opinion

between physicians. Prison authorities have "considerable latitude in diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)); *see also White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("Certainly, no claim is presented when *a doctor* disagrees with the professional judgment of another doctor. There may, for example, be several ways to treat an illness.") (emphasis in original); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.") (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)); *Foote v. Nevada Dep't of Prisons*, 139 F.3d 904 (table), 1998 WL 74993, at *1 (9th Cir. 1998) ("A difference of opinion, whether between an inmate and physician or between physicians, does not give rise to an Eighth Amendment violation") (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Taylor v. Dutton*, 85 F.3d 632 (table), 1996 WL 253856 *2 (7th Cir. 1996) ("Mere differences of opinion among medical personnel over questions of treatment do not give rise to an Eighth Amendment claim.") (citations omitted); *Hanson v. Smith*, 9 F.3d 1557 (table), 1993 WL 499831, at *2 (10th Cir. 1993) ("Even should medical opinions differ among prison doctors, such a difference of opinion does not support a claim of cruel and unusual punishment") (citation omitted); *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988) ("[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires."); *Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Gindraw v. Dendler*, 967 F. Supp. 833, 836

(E.D. Pa.1997) (DuBois, J.) (a doctor's exercise of his professional judgment is never deliberate indifference).

Even assuming Oliver's groin, arm and chest pain qualify as a serious medical need,[5] his allegations do not show that the doctors were deliberately indifferent to that need. At best, Oliver alleges a difference of opinion with respect to proper medical treatment, not deliberate indifference.

Oliver's complaint presents two conflicting scenarios. On one hand, he claims that the prison medical staff ignored his complaints of pain and did not perform surgery for a muscle tear. On the other hand, according to his own allegations, the staff did not ignore his complaints. Rather, they evaluated and treated him. Drawing all inferences in Oliver's favor, he alleges that the doctors chose to follow what they thought was proper treatment instead of following his directions and wishes. Oliver complains that Dr. Stefanic prescribed physical therapy rather than surgery. He concedes that Dr. Stefanic told him he could not get the surgery until the tear in the socket was repaired. Oliver alleges that the other defendant doctors continued to prescribe him pain and anti-inflammatory medication instead of scheduling him for surgery.

---

[5] Courts have found that a torn rotator cuff presents a serious medical need. *See Kostyo v. Harvey*, No. 09-2509, 2010 WL 3522449, at *8 (N.D. Ohio Sept. 8, 2010) ("Severe shoulder pain, including a possible rotator cuff tear, may qualify as a serious medical need."); *Palmer v. Randle*, No. 10–cv–718, 2011 WL 2470062, at *4 (S.D. Ill. June 20, 2011) ("A torn rotator cuff . . . is the sort of chronic, painful condition that a layperson would find objectively serious."); *Thomas v. Neves*, No. 07-01249, 2010 WL 1644789, at *3 (E.D. Cal. Apr. 21, 2010) (concluding that a rotator cuff tear is a serious medical need). Chronic leg and back pain for which a prisoner had been prescribed certain therapy and medication and which caused him to walk with a cane was also found to be a serious medical need. *Harris v. Hershey Medical Center*, No. 08-cv-843, 2009 WL 2762732, at *5 (M.D. Pa. Aug. 27, 2009); *see also Spruill*, 372 F.3d at 236 ("[The Plaintiff's] back conidition itself has allegedly required significant and continuous medication, and has caused him excruciating pain . . . The extreme pain and real possibility of permanent injury could qualify Spruill's condition as a serious medical need . . . at the motion-to-dismiss stage . . . ."). Given the foregoing, a reasonable jury could find that Oliver suffered a serious medical need.

The detailed complaint does nothing more than chronicle Oliver's efforts to get the surgery he claims that Dr. Stefanic told him he needed, and the x-rays and an MRI that he wanted. It does not allege facts necessary to support a plausible claim that the medical defendants intentionally refused to provide medical care in disregard of a substantial risk to Oliver's health or safety, or denied reasonable requests for medical treatment. On the contrary, as Oliver alleges, the defendant doctors did treat him for his complaints. He simply disagrees with their professional medical decisions. In short, Oliver has not alleged facts giving rise to a cause of action for deliberate indifference against the individual medical defendants.

Nor does Oliver state a cause of action against Wexford and PHS for deliberate indifference. Although a private corporation while acting for the state may be sued under § 1983 for actions taken that deprive an inmate of adequate medical care, *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)); *see also Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003), it cannot be held liable for the actions of its employees under a *respondeat superior* theory. *Natale*, 318 F.3d at 583. Where it instituted a policy, practice or custom that resulted in the plaintiff's constitutional injury, the corporation can be liable. *See Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005).

Having determined that Oliver has failed to state a claim for deliberate indifference against the individual medical defendants, we need not reach the question of whether the action taken was the result of a Wexford or Corizon policy, practice or

custom. There was no constitutional violation that could have resulted from any such policy. Thus, no liability can be imputed to Wexford or Corizon.

Oliver sues the DOC defendants in both their official and individual capacities.[6] A government official, acting in his official capacity, is not a "person" subject to suit under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, all claims for compensatory relief against the DOC defendants in their official capacities must be dismissed.

Oliver also names Grossman and Edwards, registered nurses at SCI-Grateford, as defendants. He conclusorily asserts that they personally subjected him to the unlawful actions and conditions described in the complaint. Compl. ¶¶ 7-88. He makes no further reference to them. He alleges nothing that they did or did not do. Therefore, claims against Grossman and Edward must be dismissed.[7]

In his complaint, Oliver does not allege any facts that support an inference that the prison officials, Wenerowicz and Korszniak, participated in or directed the medical decisions. He makes the bald statement that they are preventing him from getting the needed surgery and tests.

Non-medical prison officials are afforded wide latitude in leaving prisoners' care to medical personnel. *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Thomas v. Dragovich*, 142 F. App'x 33, 42 (3d

---

[6] By Order dated September 26, 2013, we dismissed the Pennsylvania Department of Corrections as a defendant. Doc. No. 4 ¶ 6.

[7] With respect to the remaining defendants, to date, Dr. Long/Longo has not been served. Oliver's only allegation with respect to Dr. Long/Longo is that he prescribed Naproxen to alleviate groin tear pain, but the medication did not stop the pain. Compl. ¶ 32. Oliver makes no claims against Jane and John Doe defendants, stating only that they will be named "once discovery is obtained with the names of Board members." Compl. ¶ 23.

Cir. 2005) (Becker, J., dissenting) (prison officials are afforded "broad discretion to leave prisoners in the hands of medical personnel"). Non-medical prison personnel are not chargeable with deliberate indifference for withholding specific treatment from a prisoner unless they knew or should have known that medical personnel were mistreating or failing to treat a prisoner. *Spruill*, 372 F.3d at 236; *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-physician prison official cannot be considered deliberately indifferent in failing to respond to medical complaints of a prisoner already under treatment by the prison's medical experts).

As Oliver himself alleges, he was receiving medical treatment for his ailments. He had numerous doctors' visits, was prescribed various pain medications, received multiple physical therapy sessions, and was given three EKG tests with normal results. Because Oliver has failed to allege facts from which one could conclude that Wenerowicz and Korszniak were deliberately indifferent to his medical needs, all claims against them must be dismissed.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a related state court claim if it has dismissed all claims over which it has original jurisdiction. If all federal claims are dismissed before trial, "the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining jurisdiction. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citation omitted). No extraordinary circumstances exist

here. Accordingly, we decline to exercise supplemental jurisdiction over Oliver's medical malpractice claims.[8]

## Conclusion

Because Oliver has failed to state a claim for a constitutional violation under the Eighth Amendment and we decline to exercise supplemental jurisdiction over his state law medical malpractice claims, we shall grant the motions to dismiss.

---

[8] Oliver's complaint alleged a Title VI claim against the Pennsylvania Department of Corrections. PA DOC is no longer a defendant in this case. *See* 9/26/2013 Order ¶ 6. For reasons that are unknown, the Wexford defendants moved to dismiss Title VI and ADA claims that were not asserted in the complaint. Because the complaint did not assert a violation of the ADA, we do not address this argument.